IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 12-00291-19-CR-W-GAF |
| | ) | |
| VICTOR D. VICKERS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW, Defendant, Victor Vickers, by and through his attorney of record, William David Langston, of Langston Law, Chartered, and submits the following sentencing memorandum and request for time served. This sentencing memorandum is intended to provide relevant and material information that will assist the Court in determining a reasonable and appropriate sentence in this matter. This memorandum also provides the appropriate authority to show that application of the 2A1.1 enhancement in this case would result in an erroneous sentence and a miscarriage of justice.

## APPLICABLE SENTENCING GUIDELINES RANGE

The Supreme Court has noted that a District Court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468, 168 L. Ed. 2d 203 (2007). To determine the correctly calculated Guidelines range, the Court must determine the amount of controlled substance for which Mr. Vickers should be held accountable under U.S.S.G. 2D1.2. The Court must also determine the statutory sentencing range and the maximum sentence that may be imposed according to the facts reflected in the jury verdict. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

In the Presentence Investigation Report ("PSR") that was prepared and submitted in regards to Mr. Vickers, the probation officer left to the Court to determine the facts that provide the basis for the total offense level, and ultimately the appropriate sentencing guidelines range in this case. In response to Mr. Vickers' objections concerning these facts, the probation officer concluded that, "The Court, having heard the testimony

provided at the defendant's trial, is in the best position to determine if the defendant's objections are accurate and if there should be an adjustment to the quantity of controlled substance for which he should be held accountable". Mr. Vickers agrees with this statement and offers this memorandum to assist the Court with determining the appropriate sentence to be imposed in this case.

Defendant would first address the issue of the statutory maximum in this case. Mr. Vickers proceeded to trial by jury and was found guilty of the lesser included offense of conspiracy to distribute less than 100 kilograms of marijuana, which was the lowest available offense out of the selection of lesser included offenses that were submitted to the jury on the verdict form. However, the inquiry as to the appropriate statutory maximum sentence does not end there. In most drug cases, a lesser included jury verdict form would only offer three (3) statutory alternatives which are found in 21 U.S.C. 841(b)(1)(A), 841(b)(1)(B), and 841(b)(1)(C). As such, these are the only three alternatives that were offered to the jury. However, in a marijuana case, there is a fourth alternative which is found in 21 U.S.C. 841(b)(1)(D), which provides a statutory maximum sentence of five years for a quantity finding of 50 kilograms or less. This fourth alternative was not submitted to the jury in this case. The Supreme Court has held that any fact "that increases the penalty for the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Due to the fact that the quantity found in 21 U.S.C. 841(b)(1)(D) was never submitted to the jury, the verdict rendered by the jury in this case rests on two separate alternative findings, which are 100 kilograms or less, and 50 kilograms or less. When a jury renders a verdict that may rest on any of several alternative factual findings, the Court must sentence the defendant on the alternative that yields the lower sentencing range. *United States v. Nicholson*, 231 F.3d 445, 454 (8th Cir. 2000). Under *Apprendi*, Mr. Vickers cannot be sentenced under the higher statutory maximum unless the issue of quantity had been submitted to the jury. See *United States v. Butler*, 238 F.3d 1001, 1005 (8th Cir. 2001), and *United States v. Ray*, 250 F.3d 596, 603 (8th Cir. 2001). In both *Butler* and *Ray*, the Eighth Circuit held that when a jury finds a defendant guilty of an unspecified amount of marijuana, the sentencing Court must sentence the defendant under 21 U.S.C. 841(b)(1)(D).

Next, the Court must make a quantity finding of the amount of controlled substance for which Mr.

( 2 )

Vickers should be held accountable for under U.S.S.G. 2D1.2. The Eighth Circuit has held that "For purposes of a defendant's relevant conduct and sentencing range, the district court may only take into account drug quantities at issue during the time frame that a defendant was a part of the conspiracy." *United States v. Foxx*, 544 F.3d 943, 953 (8th Cir. 2008) (citing United States Sentencing Guidelines Manual (U.S.S.G.) 1B1.3 cmt. n.2). As noted in Defendant's objection to Paragraph 45 of the PSR, the only quantities at issue during the time frame that Mr. Vickers was alleged to have been a part of the conspiracy are the 10-14 pounds testified about by Darryl Taylor. The PSR attempts to also attribute quantities from the statements of Keith Jones. However, those transactions were alleged to have occurred 16 months prior to the conduct for which Mr. Vickers was convicted and therefore those transactions were outside the scope of the offense of conviction and cannot be considered as being a part of the same course of conduct. See *United States v Rhine*, 583 F.3d 878, (5th Cir. 2009)(reversing where relevant conduct was separated from offense of conviction by 17 months). See Defendant's objection to Paragraph 45. The PSR also attempts to hold Mr. Vickers accountable for a transaction between Garron Briggs, a defendant in a completely separate indictment, and a confidential informant where Mr. Vickers was merely present during the transaction. Mr. Vickers did not participate in that transaction in any way. He did not have any type of agreement with Briggs or the CI, and therefore that transaction cannot be considered as jointly undertaken criminal activity. U.S.S.G. 1B1.3 cmt.n.2 specifically explains that the conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant is not relevant conduct. See Defendant's objection to Paragraph 45.

Therefore, the only quantity of drugs that would be attributable to the relevant conduct of Mr. Vickers is the 10-14 pounds (5-7 kilograms) testified about by Darryl Taylor, and only Darryl Taylor.

After determining the appropriate quantity and base offense level, the Court must determine if the 2A1.1 enhancement proposed by the PSR is applicable in this case. As noted in Defendant's objections to Paragraph 51 of the PSR, application of the 2A1.1 enhancement in this case would result in a miscarriage of justice for several different reasons.

First, in order for the 2A1.1 enhancement to apply, murder must be an element of the offense that is charged in the indictment and must be an object of the conspiracy for which a defendant is convicted. See

*United States v. Aderhollt*, 87 F.3d 740, 744 (5th Cir. 1996)(holding that in order for the 2A1.1 enhancement to apply, murder must be an object of the conspiracy charged in the indictment), also *United States v. Pena*, 742 F.3d 508, 514 (1st Cir. 2014)(holding that an enhancement for death resulting must be charged in the indictment and submitted to the jury), and *Burrage v. United States*, 134 S. Ct. 881, 187 L. Ed. 2d 715, 2014 U.S. LEXIS 797, *10-11 (2014) ("[T]he 'death results' enhancement . . . is an element that must be submitted to the jury and found beyond a reasonable doubt." (citing *Alleyne*, 133 S. Ct. at 2162-63)).

Second, the U.S. Sentencing Guidelines strictly prohibit the application of the enhancement in this case. U.S. Sentencing Guidelines Manual 1B1.3(a) states in part, that the application of a cross reference shall be determined on the basis of all acts and omissions committed...by the defendant...; solely with respect to offenses of a character for which U.S. Sentencing Guidelines Manual 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in 1B1.3(a)(1)(A) and 1B1.3(a)(1)(B) that were part of the same course of conduct or common scheme or plan as the offense of conviction. In order for Sentencing Guidelines Manual 1B1.3(a)(2) to apply, *both the offense of conviction and the relevant conduct offense must be capable of grouping.* **Homicide offense are explicitly excluded from grouping.** See U.S.S.G. 3D1.2 which states "Specifically excluded from operation of this subsection are: all offenses in Chapter Two, Part A (except 2A3.5)" See *United States v. Horton*, 693 F.3d 463, 482 (4th Cir. 2012), and *United States v. Sellers*, 512 Fed. Appx. 319 (4th Cir. 2012).

Third, the murder allegations do not constitute relevant conduct because the allegations cannot be considered as a part of the same course of conduct as the offense of conviction in this case. See *United States v. Honken*, 541 F.3d 1146, 1158 (8th Cir. 2008). In *Honken*, a case concerning double jeopardy issues, the Eighth Circuit agreed with the District Court's reasoning based on *Garrett v. United States*, 471 U.S. 773, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985) when the District Court reasoned:

> Plainly, what is prohibited and punished by the statute defining a drug conspiracy offense is an agreement to *commit drug-trafficking offenses,* but what is prohibited and punished by the statute defining a drug conspiracy murder offense *is the murder,* albeit, a murder related to the drug-trafficking conspiracy. Thus, what the conspiracy murder offense punishes is a *collateral* "course of conduct" to the conduct at issue in the drug conspiracy offense, and the "greater offense" does not involve a "single course of conduct" shared with the "lesser offense."

Fourth, the application of the enhancement would deprive Mr. Vickers of his constitutional rights under the Sixth Amendment. A defendant shall not be punished for crimes unless tried before and convicted by an impartial jury. U.S. Const. art. III, §2; U.S. Const. amend. VI. The Supreme Court in *Alleyne v. United States*, 133 S. Ct. 2151, 2158, 186 L. Ed. 2d 314 (2013), noted that "The essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact. It is obvious, for example, that a defendant could not be convicted and sentenced for assault, if the jury only finds the facts for larceny, even if the punishments prescribed for each crime are identical. One reason is that each crime has different elements and a defendant can be convicted only if the jury has found each element of the crime of conviction." (citing *Alleyne*, 133 S. Ct. at 2162-63). Mr. Vickers was only convicted of conspiracy to commit one crime, which was to distribute marijuana under 21 U.S.C. 841 and 846. Conspiracy murder is found in 21 U.S.C. 848(e), and contains an additional element that forms a separate crime apart from 21 U.S.C. 841 and 846.

Finally, but most importantly, in regards to the enhancement, the allegations are not supported by the evidence. Please see Defendant's objections to Paragraph 51 of the PSR. Also, see Order dismissing the murder charges against Mr. Vickers (exhibit 1) and the investigative report submitted by the deceased victim's own family which clearly attempts to exclude Mr. Vickers as having no involvement in the crime (exhibit 2).

Therefore, with a quantity finding of 5-7 kilograms of marijuana, the offense level should be level 12. For a defendant with a criminal history in category III and a total offense level of 12, the applicable Sentencing Guidelines range would be 15-21 months. A sentence within the Guidelines range is presumptively reasonable. *United States v. Lazenby*, 439 F.3d 928, (8th Cir. 2006). By the time of sentencing in this case, Mr. Vickers will have been in federal custody for more than 30 months. A sentence of time served would be a sentence which is sufficient, but not greater than necessary to satisfy the statutory goals of sentencing as outlined in 18 U.S.C. 3553(a).

## 18 U.S.C. 3553(a) FACTORS AND REQUEST FOR TIME SERVED

The Supreme Court has noted that a District Court should begin all sentencing proceedings by correctly

( 5 )

calculating the applicable Guidelines range. *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468, 168 L. Ed. 2d 203 (2007). Also, in determining the particular sentence to be imposed, the Court shall consider the factors listed in 18 U.S.C. 3553(a). The Court first considers the nature and circumstances of the offense and the history and characteristics of the defendant.

According to the trial testimony of Darryl Taylor, Mr. Vickers was only involved with 10-14 pounds (equivalent of 5-7 kilos) of marijuana during the course of the conspiracy. Under the new Sentencing Guidelines which took effect on November 1, 2014, this quantity results in a base offense level of 12, with a range of punishment of 15-21 months imprisonment for a defendant in criminal history category III.

In this case, the purposes of sentencing as outlined in Section 3553(a) can effectively be met, and justice can be served, by imposing a sentence of time served. The nature of the offense and the history and characteristics of the defendant, including his very limited participation in the charged conspiracy, warrant the requested sentence and provide significant mitigating factors to consider in sentencing.

## I. NATURE OF THE OFFENSE

This case involves a conspiracy to distribute cocaine and marijuana, which began on or about February 1, 2010 and continued until approximately February 25, 2014. Mr. Vickers was alleged to have participated in the conspiracy in April 2011, and alleged to having only participated in two transactions with Darryl Taylor. After the transactions in question, Mr. Vickers focused full time on his legitimate business ventures by marketing his janitorial company in an attempt to gain contracts, and expanding the services provided by his entertainment company. Shortly after, in August 2011, Mr. Vickers was arrested on the unresolved murder allegations and he has remained in custody ever since. In a conspiracy that lasted four years, his involvement would have been extremely short lived.

The trial testimony of all the witnesses combined made it very clear that Mr. Vickers was not a major player in the charged conspiracy. Each of the major players in the conspiracy that testified, said that they did not know Mr. Vickers. Of the few witnesses that did know Mr. Vickers, each testified that he never sold cocaine and that he only sold small quantities of marijuana such as user amounts. Darryl Taylor was the only member of the charged conspiracy that testified to having any transactions with Mr. Vickers, and alleged that only two

transactions occurred which amounted to a total of 10-14 pounds.

## II. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Vickers has never been previously convicted of any drug offenses, and until the instant case, he had not been convicted of any new felonies since 2003 at the age of 18. All of his previous convictions were committed at age 18 and younger. In *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), the Supreme Court quotes a study stating that a lack of maturity and an undeveloped sense of responsibility are qualities that "often result in impetuous and ill-considered actions." In a separate opinion, where determining if there was a probability that a defendant would continue to commit criminal acts in the future, the Supreme Court stated that "youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and psychological damage" (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982)).

The fact that Mr. Vickers' convictions are more than ten years old, and the convictions were low level, non-violent felonies, could warrant a downward departure under U.S. Sentencing Guidelines Manual 4A1.3(b). U.S.S.G. 4A1.3 reads, "If reliable information indicates that the defendant's criminal history category substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes, a downward departure may be warranted."

Mr. Vickers has no history of drug abuse, and is not mentally or physically disabled. Each witness that did know Mr. Vickers testified that he had a legitimate source of income through his entertainment company. Mr. Vickers has always maintained some source of employment since he was 14 years old. His employment ranged from working at the Police Athletic League, Time Warner Cable, Quik Trip, and various fast food restaurants as a teenager, and Caremark Prescription Services as an adult at the age of 18. In 2005, Mr. Vickers inherited $20,000 from the death of his step father at which point he went into business for himself. Mr. Vickers also attended 2 years of college in which he was working on a degree in business management. In 2011, prior to his arrest, Mr. Vickers incorporated a janitorial service named Sparkle Master for which he was in the process of obtaining contracts but was unable to successfully secure any contracts before being incarcerated. He also opened a recording studio in south Kansas City as an extension of his already existing entertainment company to offer

audio recording and video production services for other individuals in the community. Another function of his

entertainment company was the production and promotion of concerts and events. The last event produced by

Mr. Vickers, which was only 5 days before his incarceration began, was a pool party at Coco Key Water Resort.

This event had an attendance of almost 1,000 people from the Kansas City community. As a charitable deed, Mr.

Vickers donated a small portion of the proceeds to the Derrick Thomas Third and Long Foundation (see letter of

support from Dr. Kenneth Hughlon). During the time of his incarceration, Mr. Vickers has taken on the

responsibility of starting a new business which is passionately committed to bringing families closer to their

loved ones during periods of incarceration by providing an extremely convenient and affordable service for

sending pictures and letters to inmates all over the country. This business has the potential of positively affecting

society by contributing to the reduction of recidivism. Studies have shown that inmates who maintain contact

with the outside world are much less likely to commit further crimes. After just a few short months of operation,

the business is already gaining momentum and showing extremely positive indications of potentially unlimited

success. However, the physical presence of Mr. Vickers is greatly needed for the business to reach and operate

and it's full potential.

### III. ADDITIONAL 3553(a) FACTORS

The second factor to be considered by the Court is the need for the sentence imposed--
      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just
      punishment for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes of the defendant; and
      (D) to provide the defendant with the needed educational or vocational training, medical care, or
      other correctional treatment in the most effective manner;

With respect to section 3553(a)(2)(A), Mr. Vickers was convicted of conspiracy to distribute only

marijuana, which is one of the least harmful of drugs that are punishable under Federal statues. Several states

have already legalized the recreational and medical uses of marijuana, and many other cities and states have now

decriminalized possession of marijuana. Although illegal distribution will continue to remain a felony, this

information is relevant to show that marijuana does not negatively affect society in the ways that some of the

more harsh drugs such as methamphetamine and cocaine affect society. Further, Mr. Vickers' role in this

conspiracy was extremely limited and short lived. He may have been one of the least culpable defendant's during

the time frame charged in the indictment.

A sentence of time served would reflect the seriousness of Mr. Vickers' offense. See *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). In *Gall*, the Supreme Court agreed with the District Judge's explanation of why he had concluded that the sentence of probation reflected the seriousness of Gall's offense instead of the proposed 30-37 months guideline range, and that no term of imprisonment was necessary:

> "Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who, the Court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life. The Defendant's post-offense conduct indicates neither that he will return to criminal behavior nor that the Defendant is a danger to society. In fact, the Defendant's post-offense conduct was not motivated by a desire to please the Court or any other governmental agency, but was the pre-Indictment product of the Defendant's own desire to lead a better life."

Here, Mr. Vickers was clearly trying to start on a straight path in life before being incarcerated. He has since used his time of incarceration to strengthen his desire and chances of becoming a productive law abiding citizen by taking the time to educate himself, setting the proper goals, and making the proper plans for his future. Any sentence of further imprisonment would deprive Mr. Vickers of the opportunities to pursue his potentially very lucrative new business venture. It would also deprive society of the full benefit of receiving the services he wishes to provide. His mother is currently attempting to run the business, but only as a temporary measure until Mr. Vickers is released.

With respect to sections 3553(a)(2)(B), (C) and (D), Mr. Vickers appears to have self rehabilitated during his more than two (2) years of incarceration in Federal custody. He has read countless books (only one of which has been a novel) on various subjects such as business, health and fitness, spiritual, and other educational and self help topics. He has began a lifestyle of healthy eating and daily physical exercise. As previously mentioned, he has even gone as far as starting a new business. He took what began as merely an idea to communicate more efficiently with the outside world, and turned it into a real life, operational business despite the extreme limitations placed upon him by incarceration. He has not incurred a single disciplinary infraction during his time of incarceration. It appears that he has been adequately deterred from any future criminal conduct. The success of his new business venture will not only protect the public from any further crimes from the Defendant, it will

also serve the public by potentially contributing to the reduction of recidivism, bringing families closer to their incarcerated loved ones, and providing employment opportunities for members of the community.

Section 3553(a)(3) directs the Court to consider the kinds of sentences available. The Supreme Court noted in Gall that "the Guidelines are only one of the factors to consider when imposing a sentence, and 3553(a)(3) directs the judge to consider sentences other than imprisonment." In this case the Court could consider a sentence of time served.

Under Section 3553(a)(6), the Court also considers the need to avoid unwarranted sentence disparities among defendants with similar records that have been found guilty of similar conduct. Mr. Vickers would point out to the Court that codefendant Carl Taylor pleaded guilty to the distribution of 20 pounds and received a sentence of time served after serving 20 months of incarceration. Darryl Taylor only attributed 10-14 pounds to Mr. Vickers during the time frame of the conspiracy (which makes his culpability *less* than Carl Taylor), and he has already been in custody more than 20 months (which is *much longer* than codefendant Carl Taylor was incarcerated). Carl Taylor also had previous drug convictions, whereas Mr. Vickers does not. The imposition of less severe sentences on co-defendant's who are substantially more culpable than Mr. Vickers would generate an unwarranted sentencing disparity in violation of 3553(a)(6). See *United States v. Jarabaa*, 2010 U.S. Dist. LEXIS 21446 (8th Cir. 2010).

## CONCLUSION

With a quantity finding of 5-7 kilograms of marijuana, the offense level should be level 12. For a defendant with a criminal history in category III and a total offense level of 12, the applicable Sentencing Guidelines range would be 15-21 months. By the time of sentencing in this case, Mr. Vickers will have been in federal custody for more 30 months. A sentence of time served would be a sentence which is sufficient, but not greater than necessary to satisfy the statutory goals of sentencing as outlined in 18 U.S.C. 3553(a). The nature of the offense and the history and characteristics of the defendant, including his very limited participation in the charged conspiracy, his drive to create a better life for himself even under the circumstances of incarceration, and the likelihood that he will not commit any further crimes in the future, all warrant the requested sentence and provided significant mitigating factors to consider in sentencing.

( 10 )

WHEREFORE, for all these reasons, defendant respectfully requests a sentence of time served followed by an appropriate term of supervised release.

Respectfully submitted,

William David Langston
115 East Park Street
Suite C
Olathe, Kansas 66061
(913) 341-8530
Langstonlaw@sbcglobal.net

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was on counsel for the United States and all parties via electronic notification pursuant to local rule on this 1st day of ~~March~~, 2015.
April

William David Langston
ATTORNEY FOR DEFENDANT